UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

OCT 19 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-619-GWU


PENELOPE BOWLING,                                          PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI).  The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled.  If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
     claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities?  If yes, proceed to
     Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

Bowling

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Bowling

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Bowling

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Bowling

physical and mental impairments.   Varley v. Secretary of Health and Human

Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Penelope Bowling, filed her current application for SSI benefits

on February 18, 2003, alleging disability beginning October 2, 2001 due to an

inability to sit, stand, or walk for long periods of time.   (Tr. 108).[1]   After her

application was denied initially and upon reconsideration, she requested and

received a hearing before an Administrative Law Judge (ALJ) who, basing his

decision partially upon the testimony of a vocational expert (VE) in response to

hypothetical question, determined that the plaintiff was "not disabled" at Step 7 of the

Garner analysis.  (Tr. 20-3). The plaintiff appeals, contending that the ALJ erred in

not finding her disabled without regard to VE testimony under the Commissioner's

Medical-Vocational guidelines (the "grids").

Mrs. Bowling was born on April 13, 1948, and was 54 years old at the time the

ALJ issued his hearing decision on February 18, 2003.  (Tr. 33, 75, 79). However,

as the plaintiff points out, she was only slightly more than two months short of

reaching her 55th birthday. The ALJ applied grid rule 202.13, applicable to a person

---

[1]The plaintiff had previously filed an application for benefits in 1995, but this application was eventually denied by an Administrative Law Judge (ALJ) on December 15, 2000 (Tr. 67-73).  This Court affirmed the Commissioner's decision. Bowling v. Chater, London Civil Action No. 01-324 (E.D. Ky. August 31, 2002). The ALJ in the present case declined to reopen the prior application (Tr. 14).

"closely approaching advanced age" (i.e., age 50-54), with a high school education, and unskilled or no work experience, which directs a conclusion of "not disabled." If the plaintiff had reached her 55th birthday at the time of the ALJ's decision, the applicable rule would have been 202.04, which directs a conclusion of "disabled."

The Commissioner's regulations at 20 C.F.R. 416.963(b) provide that the age categories of the grids will not be applied "mechanically in a borderline situation." The regulation goes on to state that if a claimant is "within a few days to a few months of reaching an older age category, and using the older age categories would result in a determination or decision that [the claimant is] disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." The Sixth Circuit has held that this regulation, in stating that "age categories are not to be applied mechanically . . . obviously does not mean that a claimant must be moved mechanically to the next age category whenever his chronological age is close to the category." Crady v. Secretary of Health and Human Services, 835 F.2d 617, 622 (6th Cir. 1987). In Crady, the plaintiff was a month or less away from his 55th birthday at the time of the administrative decision, but, as in the present case, the ALJ applied the grid rule for a person "closely approaching advanced age." The Sixth Circuit held that the ALJ's use of this category was permissible, and it was not in a position to state that the ALJ committed error in not placing Crady in the "advanced age" category. Id.

8

In the present case, the plaintiff frames her argument in different terms, arguing that the Commissioner did not follow her own procedures in even considering whether to use the older age category. The Court agrees.

The ALJ's decision contains no discussion of "the overall impact of all the factors" in Mrs. Bowling's case as relating to the proper grid rule. It is simply assumed that she falls into the category of "closely approaching advanced age." The Commissioner's Hearings, Appeal, and Litigation Law Manual (HALLEX) Section II-5-3-2 instructs an ALJ to utilize a four step process when the claimant's age is within the borderline window outlined in Section 916.463:

> Determine whether the claimant's age is within a few days or a few months of a higher age category.
>
> If so, determine whether using a higher age category would result in a decision of "disabled" instead of "not disabled."
>
> If the answer to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age.
>
> If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.) To decide which age category to use, take a "sliding scale" approach. Under this approach, the claimant must show progressively more additional vocational adversity(ies)--to support the use of the higher age--as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.

Bowling

The Sixth Circuit has discussed the HALLEX manual in unpublished cases in the context of providing certain procedural safeguards. See Robinson v. Barnhart, 124 Fed. Appx. 405, 410 (6th Cir. 2005); Adams v. Massanari, 55 Fed. Appx. 279, 285-6 (6th Cir. 2003). The ALJ clearly did not follow the HALLEX procedures in the instant case. Even without assuming that HALLEX is binding, the more general provisions of Section 416.963(b) were not followed.

The Sixth Circuit has recently emphasized that "[i]t is an elemental principal of administrative law that agencies are bound to follow their own regulations." Wilson v. Commissioner of Social Security, 378 F.3d 541, 545 (6th Cir. 2004). In Wilson, the Court held that "reversal is required because the agency did not follow its own procedural regulation," even though the decision was otherwise supported by substantial evidence. Id. at 544.

In the present case, the need for a remand is even more compelling than in Wilson, since it was the Commissioner's burden at Steps 1 through 7 to show that there were jobs existing in the national economy that the claimant could perform, and placing the plaintiff in the category of "advanced age" would result in an award of benefits under grid rule 202.04. There is also an indication that there would be "other factors" as mentioned in 416.963(b).[2] Although the plaintiff stated she had

---

[2]HALLEX II-5-3-2 lists "additional vocational adversities" to be considered by the ALJ as including "a history of work experience in an unskilled job in one isolated industry or work setting."

10

Bowling

attended all twelve years of high school, she had been in special education the entire time, and had never received a diploma. (Tr. 38-9). Additionally, there was IQ testing which provisionally placed Mrs. Bowling in the range of "borderline intellectual functioning" (Tr. 199-200), and the ALJ accepted borderline intellectual functioning as a "severe" impairment (Tr. 15-16). Thus, whether she had the educational capacity normally implied by a high school education for purposes of the grids is at least questionable. Mrs. Bowling also had no work experience since the early 1970s. (Tr. 40).

The case will be remanded for further consideration of the factors outlined in this opinion.

This the ___/9___ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11